The brief raises three key points. First of all, that there are triable issues of fact under the Fair Credit Reporting Act. Secondly, that there were triable issues of material fact precluding summary judgment as to the state law libel claim. And third, that the California statute, 1785.25, should not have been deemed preempted and dismissed at the time of the hearing. I believe all three of these arguments merit this Court's serious attention under a de novo standard of review. But the crux of the case is the FCRA claim. So most of my argument is going to be focused on that. I'd like to initially address the statute and its purpose, talk about the duties of a credit furnisher at the reinvestigation stage after there's a notice from a credit reporting agency that a consumer is disputing information, and then talk about the evidence that does exist in the record that I believe warrants reversal of the decision below. In this Honorable Court's decision in 2001 in a case called FTC v. Gill, this Court profoundly began its decision with a comment that a bad credit report is the modern-day equivalent of a scarlet letter. Well, over 30 years ago, Congress recognized that to be true and decided to adopt the Fair Credit Reporting Act. And it didn't intend to occupy the field or annul existing remedies that consumers had to try to redress inaccurate credit information, but it intended to provide an additional remedy for that. And it was intending to protect consumers. It's a statute with a liberal construction. It's a statute that I think it's important in parsing a relatively cumbersome statute to keep in mind what Congress was trying to do at all times. At the same time that Congress adopted the Fair Credit Reporting Act, it also adopted the Truth in Lending Act. And later, Regulation Z was promulgated pursuant to the Truth in Lending Act that talks about the obligations of a credit card company where a consumer has a problem with goods or services sold by a particular merchant. And a set of rights was enacted into Federal law so that credit card holders would have a way to dispute charges that are posted to their account if there is a problem with goods or services. I think the central point that you're, or one of them that you're making is whether or not the, there was a reasonableness quotient that was met at the MBNA's investigation. Yes, very much. There's two. Tell me a little bit about that. I mean, we're glad to hear all the facts, but in fact, we've sort of read them all. Okay. I mean, there's two points at which a credit furnisher comes into play in the credit process. They initially report to the credit reporting agency information. There's no private right of action for that first set of reporting that happens. But when inaccurate information is reported and the consumer gets wind of it, the consumer can then notify the credit reporting agency. What did he have to do, the credit reporting agency? I mean, here, he looked at the account. He came up with a review of everything that had gone further. And he, MBNA concluded they had done their job. Right. And I think that's the problem here. What MBNA did, and what MBNA. Sure. MBNA takes the position that because the statute says that a CRA must conduct a reasonable investigation, and then in a different part of the statute says that a credit furnisher only must conduct an investigation, that the credit furnisher can conduct an unreasonable investigation. Any sort of perfunctory investigation would suffice under MBNA. But if there was just an investigation or a reasonable investigation, where did MBNA go wrong? MBNA had in front of it information that the consumer reported that the goods, which were satellite equipment, did not work. But the problem was that partly because of the way you worded your inquiry to the credit agencies, where you said, used the word fraudulent, these were fraudulent charges. And they interpreted that probably not unreasonably to mean that you were alleging fraud in the sense that they understand fraud, i.e., you never made these charges, you never had anything to do with these charges. And so they communicated it to MBNA in at least three of the instances, not the fourth one, in that way. And MBNA responded that there was no evidence of fraud, which was true. So at least for those three, it doesn't seem like you're, you have any, there was just a screw-up. But one that was understandable. The fourth one, they seemed to understand what the dispute was. And MBNA, so then the question is, did MBNA, if they went back to their own records and concluded that they had concluded that it was not merited, is that enough? Well, a few things. Unfortunately, the way the statute works, when you do a protest to a CRA, and particularly if it's done online, you only have something like 50 words to word your dispute. If MBNA doesn't understand the dispute, it has a duty, and I would say a reasonable duty, to conduct a diligent, systematic investigation. It can go. Well, MBNA was told the dispute, but it wasn't really MBNA that didn't understand the dispute. It was the credit agencies that didn't understand the dispute. Because when they wrote to MBNA, they said the credit, the debtors alleging fraud. So MBNA went and looked for fraud. But MBNA, what it did, what it says it did, is it checked its file notes in its computer information system. And it knew from those notes that what the consumer was alleging here was fraud in terms of selling used, defective equipment and passing it off as new equipment. Anyone looking at those notes would have known that and been able to interpret the word fraud in a way that made sense in the context of this case. So where they went wrong was they misinterpreted their own notes? They misinterpreted their own notes. It said in their own notes, their own manager in August of 2003 said this should be listed as a dispute. But that's not how they reported it. And then when they were asked to reinvestigate, they missed their own notes and, again, didn't report the dispute. So when you say the second time they investigated their internal notes, you just said they missed them. What do you mean by that? Their own internal notes say that this should have been reported as a disputed account. So, again, it's really when you say they missed them, what you're really saying is they misinterpreted them. They misinterpreted, ignored, recklessly disregarded, intentionally disregarded. All right. So other than they should have been more attentive in how they understood their own notes. One thing you're saying, is there anything else they should have done that they didn't do? Yeah. I believe that a reasonable investigation, as Johnson v. MBNA found, requires a diligent and systematic examination of the underlying facts. And just a procedure that does nothing more than look at your own notes and specifically does not even look at the underlying. Does that mean that they should have gone to the seller? They should have gone to the seller. And they should have gone. And even their own notes. They should have gone to the credit card holder. Yes. And said, all right, you tell me your version, you tell me your version, and we'll decide what to do. I believe that if they believe that they don't have sufficient information, then a diligent investigation requires that you do more than look at your own notes. Is that true here? Did they not believe that they had enough information? I thought they went through their notes, which is their regular course of business, came up with a decision, and stayed with it. They looked at their own notes, which is their regular course of business, and it was the same course of business that the Fourth Circuit in Johnson found to be woefully inadequate. But in this instance, they actually had earlier investigated. Earlier, they did investigate. You disagree with what they concluded, but they did investigate. In this case, again, even their own notes show that the merchant admitted that the goods were defective. So I have a question which I think has to do with all this. What you're ultimately saying should have been reported, as I understand it, is that there was still a dispute. I believe that they should have found that the credit card holder was correct, but at a minimum should have reported that there was a dispute. All right. Now, how does that work? The obligation to report a dispute comes out of this Regulation Z, essentially? Yes. What Regulation Z says is codified at 12 CFR 226.13G, is that even if they find that they think the consumer owes all the money, they still must report, quotes, that the amount or account is in dispute. Right. They didn't do that. Well, don't. Isn't there some other trigger? If they tell you that and you continue to say there's a dispute and you think you've fulfilled the procedural requirements for that, after they came back to you, did you say, I still dispute it? Is that yes or? Yes. Yes. Could I ask the question again? You went to them. You raised your dispute with Four Peaks. They told you what their conclusion was, and did you in whatever was the procedurally proper way say, I disagree, I still dispute it? Yes. All right. So your view is that they have to continue to say it's disputed as long as you're subjectively disputing it, no matter what they think the truth is? Correct, and that's exactly what the CFR says. They must, even after they determine how they think the dispute should be resolved, have to say to the CRA that the cardholder disputes it. All right. Now, the summary judgment was denied on this issue, at least in part, on the ground that you never actually demonstrated until after the summary judgment that the credit reports anyway did not reflect the dispute, the fact that it was still disputed. Now, I guess maybe that doesn't matter because you're not suing the credit agencies, you're suing MB&A, and the question is what did they report, not what was on the credit reports, or does it matter? I mean, because that was one of the issues is have you kind of ‑‑ Right. Is there a factual problem with this? I believe that you're technically correct because we're suing MB&A. But if you look at MB&A's answer to paragraph 8 of the complaint, they admit in the answer that they reported the account as disputed. As not disputed. So you think this ground of ‑‑ but now we're on summary judgment, and the district court says that it was a lack of evidence because you haven't presented any evidence beyond his belief that a deposition that MB&A did not report the account as disputed. There actually was evidence in both the deposition and declaration that I had seen the credit reports and had been denied credit based upon what was in those credit reports. That the account was being reported. That proves what the credit ‑‑ that proves what's on the credit report, and I suppose it's circumstantial evidence of what MB&A reported. It's not direct evidence of what MB&A reported. But it is evidence, and all evidence is taken most strongly in favor of the nonmoving party, and it was never objected to below. So that evidence was before the district court, as was MB&A's answer admitting that they weren't reporting this as a disputed account. So I believe that there's no ‑‑ people don't bring these lawsuits because they were reporting good information. I mean, there's really no question, other than this technicality that Mr. Narita tries to raise, that they were reporting things in an adverse manner. So jump for a minute then to the libel claim. Well, is it true, and how do we know it, that in addition to not paying this debt, you also just didn't pay the whole credit card amount, period? That you ran up another six grand, is what she's saying. Yeah, I don't believe there's another six grand. But what happened is ‑‑ Well, it was a lot more money. There's a sequence in here. MB&A began reporting the debt as delinquent, with no indication there was a dispute, during the summer, early summer of 2003. MB&A at that point began a barrage of harassing phone calls to home and office, constant phone calls. And by the time the debt was rung up and MB&A said, we're not going to fix it, there was a dispute about whether money was owed for Fair Debt Collection Practice Act claims and other types of harassment. So things had degenerated by that point. Whatever the balance was, you just didn't pay? I'm sorry? And whatever the balance was, you just didn't pay? Yeah, based on an offset that they owed money. For every one of these phone calls, I asserted that there was a violation of the debt collection act. The balance that was due on the account, you just didn't pay? Right. And one could argue about that, but clearly a portion of the debt was part of the Four Peaks dispute. The big portion was the Four Peaks dispute, late charges, finance charges. It should have always been reported as in dispute. All right. So, but with regard to a liable charge then, and assuming for the moment that the liable provision which revives the broader preemption provision, you still have to prove fraud and malice, right? You do. I mean, falsity and malice. And at least as to the chunk that you just weren't paying, it would appear hard to say that there was falsity or malice. So does that matter with regard to just washing out the liable claim? I mean, the bulk of what you weren't paying was you owed. I mean, you could claim an offset, but it certainly seemed hard to say that. I totally agree with that. I mean, the bulk of what triggered this dispute, everything that triggered this dispute was the Four Peaks issue. But the liable claim isn't based on what triggered the dispute. It's based on what was on the piece of paper that they reported to the credit companies, right? That's the liable claim, is that they falsely told the credit agencies that you owed them a lot of money. But, in fact, you did owe them a lot of money that was separate from the dispute. Well, they claimed I owed them a lot of money. I disputed that. But clearly they knew that a significant portion of that, with the way they rack up the interest fees and the late charges, was based on the Four Peaks money. So then you're going to have a liable claim that's just based on the fact that they said you owed $6,000 and you really only owed $2,000 or $3,000 or whatever the number is. That, I believe, would defame your credit. If you really only owed $2,000 and they reported $6,000, that's adverse, inaccurate information. That affects your credit score and that would be enough to trigger a claim. So the district court knocked out the liable claim on the grounds that the evidence you presented just wasn't sufficient to meet the requirements of the statute? Correct. The district court overlooked the fact that MB&A routinely failed to follow the requirements of Federal law. It overlooked Johnson v. MB&A and the testimony and the findings in that case. It overlooked the harassing phone calls. It overlooked the comment by the MB&A representative that they were going to try to destroy the Cartola's credit. There was evidence of malice. And it's not, you know, it's important to keep in mind what is the standard, but it's not a New York or Welsh v. Gertz type of evidence of malice. It's a reckless disregard or a deliberate intentional failure to follow the requirements of Federal law. That's the type of malice that's required here. Why don't you address the preemption issue for just a moment? Okay. Basically, Congress was very clear that it was not going to occupy the field. So if there's going to be any preemption here, it would need to be express preemption. Congress, when you look at what it did, said that it was going to save and preserve the California statute. But it was very precise in what it was preserving, correct? 1785.25a. I would argue it was not as precise. What it preserved was 1785.25a. But it never said it was preempting remedies. What Congress said it was going to preempt was any sort of inconsistent State law about how you report credit information. Let me ask you this. If one were to conclude that all of 1785.25a and the related specific California statutes allow for the private right of action, G and I forget the other one, you say that you've got a claim for relief, not preemptive. Isn't that – wouldn't you – would you be able to bring a claim under the State statute that you would not be able to bring under the Federal statute, that is under the A provision of the relevant corresponding Federal statute, which is – I can't remember what it is – 1681S2a? I think the State statute in particular cases could be read more broadly than the Federal statute. So your answer is yes? Yes. Why is that so? I mean, why would Congress do that? Congress preserved – Why would they say that you can bring this kind of claim under California law, but you can't do it under Federal law? Well, Congress did do that. It said that it preserved the statutes of Vermont, California, and I forget one other State. But that is what it chose to do. What Congress wanted to do was expand the remedies available to consumers, not shrink them. If it wanted to do that, it could have done field preemption and said this is the exclusive remedy for consumers. That very much isn't what it did. What it wanted to do was say that credit furnishers and CRAs would have a certain way of doing things under Federal law. For example, if you have 60 days to investigate, they didn't want a State to impose a 45-day limit or do something inconsistent. But in terms of if there was inaccurate information, what causes of action might exist and what remedies might exist and additional remedies and punitive damages and things, that was still left for State law to expand upon. And I don't see anything in the legislative history to suggest that Congress did that. When they preempted, when they, you know, when they determined, or we determined, I guess, that you can't bring a claim under – I can't remember the statutes, but the A provision of 1681. What is it? 1681S2A. They were pretty clear about that. Why would they want to say, well, okay, you can't do it under Federal law, but you can do it under State law? What Congress said was it did not intend to preempt any State statute on the ground that it was inconsistent with Federal law. Well, wouldn't that be if you can bring a claim that's of the same kind under 1681S2A under State law that would be barred under Federal law? Isn't that inconsistent? No, I think it's different. I don't think it's – inconsistent has to do with whether – But isn't the point that this is an exception to preemption? So if it – well, I mean, first of all, I'm not at all clear that – the substance of the preemption provision says no requirement or prohibition may be imposed. And it isn't clear to me that the cause of action provision is even in there. In other words, I don't know that it was preempted in the first place, and therefore I don't know that it needs to be unpreempted. I agree with that analysis. But if it did need to be unpreempted, the whole point of these sections is to – even if there's a conflict, you can do it because that's why it's unpreempted. Now, I mean, of course, this particular section isn't mentioned, but the fact that they're doing something that's inconsistent is the whole point of saving these State statutes. California never said to MB&A, you have to do something different than what Federal law requires of a credit furnisher. It didn't say we want you to respond to inquiries within 15 days instead of a different time period or you have to copy the State attorney general. It didn't do any changes with regard to what MB&A does in terms of how it handles these inquiries. What California did was say we have an additional remedy and additional rights. Is 1785.25A of the California Civil Code essentially parallel to the A section of the Federal statute? Substantively. I think – no, I think it's – it's similar, but it's more. It gives Californians a right to sue for inaccurate information just as under a State law defamation. I'm not asking about the right to sue. Substantively is the coverage of 1785.25A of the California Code. It would cover but not be limited to the section. It's not basically the same thing as the provision of the Federal statute that requires accurate reporting by creditors? It talks about negligent and willful violations. So it breaks it into two categories unlike the Federal statute does. Well, if you look at the two, 1785.25A, it states that in the relevant portions, a person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate. Then in the Federal counterpart, a person shall not furnish any information relating to a consumer to any reporting agency if the person knows or consciously avoids knowing that the information is inaccurate. Pretty similar. Pretty close. I agree they're similar. I think they're slightly different. I think there are nuances to them, but they're very similar. But Congress chose to preserve the California statute. Right. It did not preempt that. Exactly. The question is, did Congress leave a statute in effect that has no remedy, no rights to it? That makes no sense. And I think that the logic of Well, it wouldn't make no sense because the Federal one is set up that way. It doesn't have no remedy. It has a certain remedy. But when you throw in the fact that they're the same, there doesn't seem to be any reason to preserve the California statute other than the fact that there's a private cause of action there. There's nothing different that you're preserving. And if this Court were writing the law, perhaps it would write it differently. But Congress wrote it to preserve the California statute and said it was specifically not preempting 1785.25. So the California citizens had that preexisted the adoption of the Fair Credit Reporting Act were intended to remain in effect. And you don't find anything in the legislative history that indicates that they intended to take away any of the rights of California citizens. Okay. We've been very generous with your time. Great. A lot of interesting issues here. So let's hear from the appellees. Thank you. Related to the plaintiff, Mr. Gorman. He is the plaintiff. He is the plaintiff. That's a close relationship. Thank you, Your Honors, and may it please the Court. Perhaps I could go out of my planned order and start with the Court's last point on preemption. Obviously, the panel will interrupt me as necessary. But 1785.25a of the California Civil Code is identical in all material respects to the California Civil Code. Well, all the more reason why it would be pretty silly for the Federal statute to preserve it if it wasn't adding anything. Well, actually, Your Honor, I disagree, and I'll explain why. They're actually entirely consistent. If you look at the Federal statute first, 1681S2a, that requires a furnisher to report accurate information. And as this Court has held in Nelson, there's no private right of action for consumers to sue under this statute. Okay. Same thing in State law. If you look at Civil Code 1785.25, that, under State law, imposes the same duty. Thou shalt report accurate information. But just like Federal law, the remedies portions of State law were preempted. Congress obviously knew what it was doing. All right. Let me tell you two reasons, two things I'd like you to address. All right. You weren't listening to me before. That's a very peculiar thing to do, first of all, because what are you preserving if you're preserving nothing different from the Federal law? In other words, you must be meaning to preserve something that's going to make a difference in some fashion, and the way you're interpreting it makes none. That's problem A. Problem 2 is I'd like to know why the private cause of action provision is even preempted by the language of 16812B, which says, no requirement or prohibition may be imposed under the laws of any State, which seems to me to refer to the substantive requirement or prohibition, not to the remedy used to enforce it. So I don't even think it's in, so it doesn't have to come out. Thank you, Your Honor. Why am I wrong about either of those things? Let me address both of those. Okay. On your first point, I think it is meaningful to have 1785.25A on the books. It's the law. It's California law. It needs to be respected. It's an obligation. Now, if there's no remedy, you know. And it's the same as Federal law. And it's the same as Federal law. It's not going to do anything. Well, Your Honors, just because there's no way for a consumer to sue you for violating it doesn't mean it's not the law. It's there and you have to comply with it. You're regulated by people who are interested in whether you're going to comply with the law. The control of the currency, State and Federal agencies. You need to comply with this thing. It's on the books. And so it's there and it's meaningful. Now, can a consumer sue you if he breaches the obligation? No. So that's really my only response to your first point, Your Honor. The second point, I think that the Supreme Court's case in Cipollone. Cipollone really addresses it. It doesn't because what Cipollone says is when you have a cause of action, a common law cause of action, the substantive portion of it is law. But it doesn't say that if you already have a substantive section, which is setting the rule, that the question of whether there's a cause of action is itself a regulation or a requirement of prohibition. It's not. I mean, just in ordinary English it is. The requirement of prohibition is an A and the cause of action is somewhere else. Well, Your Honor, I believe that the Cipollone court goes on to note that if you're going to sue someone for a violation of State law, whether it be a statutory claim or a common law claim, that is a method of imposing a requirement under State law. The ability to sue someone for violating a statute under State law is a methodology by which you can impose a requirement of prohibition. But you just told me that the requirement was already imposed by the statute. And so it's a substantive statute. Even if you can't sue, you were very adamant about that. Even if you can't sue, there's still a requirement, and that's true. There is. Okay. So you can't sue. But so why do you have to so the requirement's already there? Well, the only thing that saves 178525A from being preempted is the express savings clause. Okay. So it is there. But that's where the requirement is. There is no requirement in the cause of action. The cause of action is a remedy for a requirement that already exists and has been preserved. My only point, Your Honor, is that what Mr. Gorman seeks to do is to go further and to sue in a lawsuit to seek to and seek remedies under 178525G, a separate section that was not saved, and 178531, a separate section that was not saved. So those are the – that's what he's trying to do, is he's trying to proceed under those sections to get his remedies. And since Congress knew they were there and did not save them, they meant – Congress meant to preempt them. And if you allow that claim to go forward, you're allowing Mr. Gorman to do what Cipollone says he shouldn't, which is to impose a requirement, in other words, seek a remedy through a complaint under the laws of the State of California. The Court asked about the investigation that was conducted. And, you know, the first point that we've raised, which I think is an important one, which I urge the Court to address in one way or another, is what the standard is so that furnishers have guidance and what the requirements are. The statute doesn't say the word reasonable. It's a carefully drawn statute. There is another portion of the statute, as we pointed out, that applies to consumer reporting agencies. That does impose a, quote, reasonable investigation, quote, close quote, requirement. Congress chose not to impose a reasonable investigation requirement on furnishers. They're different actors. They have different roles. So what does that mean? What it means is that you can just do anything and say we've investigated? No. What it means, Your Honor, is that the furnisher must investigate. It must look at the information that it has available to it in its files that it deems relevant to the investigation based on the dispute as described by the consumer reporting agency. It must do that. I gather your view is it need not go outside the four corners of its own investigation. Assuming it's done all those things. Or if they've looked at their file and their file is complete, or at least as complete as it can be, you think that's all they need to do to meet the statute. Well, that's correct, Your Honor. If what Your Honor is asking me is does a furnisher have a duty under the Fair Credit Reporting Act to, for example, investigate with third parties, call the fender, call the consumer back again and talk to the consumer, then my answer is no. Well, suppose they never did in the first place. I know you did. But suppose you hadn't done it in the first place. I mean, if there's no reasonableness component of the investigation requirement, and you get something saying, for example, well, there was fraud, and you say, well, I'm going to look at my files. I don't see any fraud. And that's it. You stop. Never having had any investigation that went outside your own files. Is that sufficient? Well, Your Honor, fraud could pose a different nature. Well, all right. Not fraud. There's a dispute about a payment. He says there's a dispute. You've never investigated the dispute earlier, and you do nothing. Is that okay? No. Doing nothing is not okay. Why isn't the investigation going in your own files and seeing whether you have a dispute there? You're saying, well, I've investigated. I have no record of a dispute. That's my investigation. If there's no reasonableness requirement, why isn't that all right? Well, let me make sure I understand what the Court's asking me, because you're using the word dispute, which, in the course of this case, is a little bit charged because there's that other issue. You get a message from some of these cryptic messages from the credit reporting agency that says, customer claims that the goods were defective, right? And you go look in your files, and you have no record that the customer ever said to you that the goods were defective, and you stop. And you go back, and you say, our record's doing this, which is what I understand essentially the facts of the Fourth Circuit case to be. And you go back, and you tell the credit agency, we have no record of that.  I think you have, Your Honor. If that's all that this dispute says, and the information that you have available to you as a furnisher doesn't provide you with any reason to believe that what you're reporting is inaccurate, then you confirm that what you're reporting is accurate. So all you need to do is look at your records, and if you have no earlier record of this dispute, that's it, it's over. Well, I think that's correct, Your Honor. Based on the hypothetical you presented, which is that the sole dispute. Well, why is that an investigation? Why is that a, well, maybe it's an investigation because anything can be an investigation. You looked at something, but you didn't look at anything that was likely to turn up the information you needed. Well, you, well, that, that I wouldn't agree with, that last statement. You do have to look at whatever you have that is likely to turn up information about the dispute. So investigate to you means look at your own records, nothing else? Whatever information you have available. Just look at your records, period, at the end. Your records. And the Johnson case out of the Fourth Circuit, I think that's the case you're alluding to, the Johnson v. MB&A case. What that case noted is there was a very specific dispute in that case. This, the woman who made the dispute said, look, this isn't my account. It was my husband's. I wasn't a co-obliger on this account, and it was an MB&A account. So that triggers a duty to, that's very specific. Why isn't it very specific? Say that she was a co-obliger. Why isn't it very specific if somebody says that the goods that they gave me weren't what I asked for, so I don't owe the money? Why isn't that specific? Because that's not something that MB&A can determine. Remember, MB&A doesn't ever see the goods. All they do is advance money on behalf of the consumer for the goods, and the consumer gets the goods and puts them in their home. So MB&A advances money on behalf of the consumer to the vendor, and then MB&A charges the consumer. So you're saying you have no obligation when somebody, I thought that you had an obligation under Regulation Z to, if somebody says, I haven't, I don't owe this money, to go find it out. Absolutely do, Your Honor, and that's a different statutory scheme which Mr. Gorman invoked and which is not before the Court, which is under the Fair Credit Billing Act, under the Fair Credit Billing Act, which Reg Z is codification there under. He did invoke his rights. He sent in letters. He said, I see this on my statement. This is, I dispute these goods. And under the Fair Credit Billing Act, MB&A investigated that, concluded its investigation. So that investigate is different than this investigate. Yes, it is, Your Honor. Why? It's very different, because that is, that's a whole different statutory scheme. It's the Fair Credit Billing Act. What's the word in that statute? It's not investigate? Excuse me? What's the term used there? The word investigation is in the statute, is in the Fair Credit Billing Act. But what I'm, I guess what I'm saying to the Court is he hasn't sued under that statute. But you're saying investigate in that statute is different than investigate in this statute as to the exact same dispute. I do, because, because, Your Honor, there's different, in the Fair Credit Billing Act, it's actually set up much differently. The consumer writes in directly to the, the account, the creditor. Okay? And it must do so within 60 days of the date that the consumer notices that there's a problem with the periodic billing statement that they've got. And they have to send all the information they need to do to a particular address that's designated by the, by the creditor. So there's a whole different set of, you know, statutory triggers and responsibilities under the Fair Credit Reporting Act, which did occur. Did MBNA had to tell the reporting agencies that the charge was disputed? Your Honor, I didn't hear the very first part of your question, so I wonder if you might repeat it. Yeah. My question is whether or not you believe that MBNA had to tell the reporting agencies that the charge had been disputed. Absolutely, they did. Under Section 1681S2A. Did you tell them that it was disputed? There is no evidence in the record one way or another as to whether they reported it as disputed or not. I thought we do have in the record what you, I'm sorry, what you wrote. We don't have anything that you wrote back at that point? There's nothing in the record that, I mean. So then you draw an inference in favor. Who moved for summary judgment here? MBNA. It was in his favor that that, that they didn't communicate that, that the bill was disputed. Okay. Well. It didn't show up. He says it didn't show up. He says he didn't show up based on his, based on hearsay, based on his interpretation of what he says is in credit reports that were prepared by third parties that he's not employed with. And so, yes, he, he, he testified and, and presented hearsay, which we objected to, about the contents of his credit reports, which were not put before the court. But I thought also in the record were the, was what you sent back to the credit agencies when they investigated it. Is that not in here? Yes. The ACDVs are in the record. All right. So that, doesn't that demonstrate whether you said it continues to be disputed? I mean, you, you were, they asked you and you wrote back and you didn't say there's still a dispute. So you didn't say it. Well, well, Your Honor, that's, that, that, the ACDVs, I don't, I don't think there's any evidence that the ACDVs, excuse me, say that one way or another. It just doesn't. Are they in here so we can tell whether they say it? So how come they're not the evidence? They don't say it. I looked at them. Well, there's nothing, there's nothing, I agree there's no written statement in there that says please mark this person's account as disputed. I don't, you know. Or in any other fashion say the customer is still disputing this. But that, I don't think that the absence of, you know, the absence of it. Well, it would be a reasonable inference on summary judgment that you didn't provide that information to the, to, to the agencies. Well, it's more than a reasonable inference. You didn't provide it to the agency. I mean, we know you provided it to the agency and you didn't provide that. I don't understand what you're saying. Where, for once would I refer that you might have provided it to the agency when I have what you did provide to the agency and you didn't provide it. Well, there's nothing in the record that, that addresses that issue other than Mr. Gorman's statement. No. Other than what you did provide to the agency, which we have. Right. So why are you saying there's nothing in the record? Well, there is, there is that and there's no, there's nothing in the record that I should claim there's something else that wasn't in the part of the record. I mean, I can't point to something else that's not before the courts, Your Honor. So there is, there is what there is. What there is certainly suggests that you didn't provide it. Okay. Well, let's assume that that's true. May I make a point about why that wouldn't matter? Okay. Let's assume that it's true, that there's evidence in the record that MBNA failed to mark Mr. Gorman's account as disputed. He still does not have a claim. And the reason why is he never told that to the consumer reporting agencies. That's what he needs to do. He needs to tell the consumer reporting agencies, hello, I've reviewed my report and I note that there is an absence of any notation that I'm disputing these charges. I dispute that. I want that corrected. If he had done that, if he had done that, that would have triggered the consumer reporting agency's duties to tell MBNA that. That would have triggered under S2A. But what did he say? He did say that this is incorrect, that the statement that I owe this money is wrong. That's not a statement that I dispute that it's wrong? No. That is not a statement that my credit report does not reflect an indication that I dispute my charges. That is a statement that says, I see something, in other words, I see that you're saying my balance is 8,000. It really should be 8,000 minus $700. It's not. I looked at my report and there's an absence of an indication that it's disputed. And it really. I just want to make sure I understand the procedure here. You said, so the credit reporting agency notifies the MBNA that the consumer is disputing a bill or whatever. They send it to you and then you sent back this information and you didn't note on it that the consumer continues to dispute the bill. We're assuming that that's true for private. Oh, yeah, just in discussion. I just want to figure out how this works. Right. And then you said, I gather the consumer is notified of what you're reporting back to the credit reporting agency. And then you just said a minute ago, well, he then had his own separate duty at that Is that what you just said? No, that's not. Okay, well then. Okay, I'm now reading from his letter to Equifax. MBNA posted certain fraudulent credit card charges. I timely notified MBNA that the charges were disputed and should be removed from my account. Yet, MBNA failed to remove them and is wrongfully claiming that my account is delinquent. No money is owed to MBNA. Moreover, MBNA has repeatedly advised by me, both orally and in writing, that is disputed but is unlawfully refusing to note the existence of the dispute on my credit record. Is that what you think you sort of said? Well, are you reading from a letter that he wrote to a consumer reporting agency? Yes. So that may be what he reported to the consumer reporting agency. Then they need to tell that to MBNA. Well, that's their problem. So now you're saying that, and maybe you're right, that if they didn't tell that to you, then you don't have any further responsibility. Exactly. All right, but you just told us the opposite. It's not very useful to get up here in court and tell me that he didn't say it when he's very, in terms, said exactly what you said he sort of should have said. I certainly didn't mean to imply that. All I meant to imply is that. You didn't imply it. You said it. Well, what I meant to say then, if I did say that, Your Honor, is that the ACDDs themselves under 1681STE, it tells us that, quote, the disputed information, close quote, is what you need to investigate. But only the disputed information. And so if the disputed information, as identified by the consumer reporting agencies, does not include, hello, this customer says that you haven't flagged his account as a disputed account, you need to update that, then no duty is triggered. It's no different than the following. Let's say Mr. Gorman's name was spelled incorrectly on his credit report, and he really only owed $8,000, but MBNA was reporting that he owed $16,000. If he submits a dispute to the consumer reporting agencies, saying both of those things, let's assume he says both of those things, but the consumer reporting agency turns around and all they tell MBNA is, customer says you spelled his name incorrectly. And the furnisher's duty is just to look and see whether the name is being spelled correctly according to what they have. Investigate, quote, the disputed information. If the CRA doesn't tell MBNA what the disputed information is, they can't investigate it. That's the filtering system that this Court talked about in the Nelson case. That's the filtering system. It may be an imperfect system, but it's the system that Congress set up, because Congress didn't want, obviously didn't want, as this Court said in Nelson, every disputatious consumer to sue over everything in their account. They set up a filtering system to run through the consumer reporting agencies. So here, you got this information from the CRAs, and you investigated, and you wrote back, right? We got only what appears in those little fragments. Right. I've got them. But you wrote back and you said, I guess you investigated, right? You looked at your records. You wrote back. And you didn't say the consumer still can ñ nonetheless, the consumer still continues to dispute this obligation. That's the assumption we're making. Now. And let's assume that's correct. Okay. Right. Okay. So now what you're saying is, is that he ñ is that Mr. Gorman then had an obligation, I guess, to notify you again that he was still disputing? No. If I may interrupt, Your Honor. No. What he had an obligation to do is say, dang it, I just got my credit report, and it's ñ and there it is. There's the account. And they're not even ñ there's no notation that consumer disputes this. How could they do that? So he had to ñ he has to go back to the CRA. He has to start all over again. And say ñ and say ñ at this time he needs to say, and perhaps he needs to repeat because he ñ if Your Honor is correct, he's already said it. He needs to say, again, look, they're not reporting it as disputing. Please report it. Which is the statute or the regulation that at that point, that last step, which is the statute or regulation that requires him to do just that? That requires whom to do this? Mr. Gorman. It's 1681S2B. That's the one. Because that's the mechanism that gives ñ I mean, he can do it under A or B. If he does it under A, he has no private right of action. If he does it under B and goes through the Consumer Reporting Agencies, instead of going directly to us, he has a private right of action. Do you want to ñ I know you're over your time, but we've been monopolizing it, address either of the preemption issues or the merits. Well, I think we addressed the preemption a little bit earlier on. Right. What are the preemption issues? There's the other one. The HE, I do want to ñ I do want to talk about the HE. And, you know, the preemption ñ preemption under HE, I think, is a misnomer. 1681HE is not a preemption section. It is an exemption. It's an exemption. And what it does is it exempts certain entities from liability for certain common law claims if they disclose information pursuant to certain subsections of the Act. And so if all those things are true, then they are exempt from liability under the Fair Credit Reporting Act. And it just doesn't apply here. The reason being is that the first ñ there's no ñ there was no disclosure of information pursuant to 1681G or H, because those subsections only apply to consumer reporting agencies, and NB&A is not a consumer reporting agency. Nor was there any disclosure of information pursuant to 1681M of the Act, nor was there any adverse action. So this is not a situation where a consumer, like Mr. Gorman is saying, you sent me an there, and I'm suing you for that. So it's just ñ it simply doesn't apply, and I would urge the Court to address that issue just because there's so much ñ there's so many cases at the district court level, not only here in the Ninth Circuit, but all across the country, which erroneously, in my opinion, interpret 1681HE as an exemption. I see that it's sitting within a section that talks about conditions in the form of disclosure to consumers, which might be limited to ñ in general to consumer reporting agencies. But this particular provision talks about no consumer may bring any action in the nature of the defamation statute with respect to the reporting of information against any consumer reporting agency, any user or any person who furnishes information to a consumer reporting agency based on information disclosure pursuant to a set of statutes, not just this one, G, H, and M. So why ñ I understand that its position is a little odd, but it's a much broader statute than the ñ than the subsection it's in. Right. And it cross-references, Your Honor, it cross-references you to three other places. One is the very section that it's in, which is 1681G, which, if you read it, only applies to consumer reporting agencies. One is 1681H, which, again, only applies to consumer reporting agencies. The third is 1681M, which applies to users of consumer reports who disclose information pursuant to an adverse action, their requirement to do so under an adverse action notice. And so those are the three cross-references. Since none of that applies here, this exemption provision really has no application. I do ñ I do acknowledge that it may be somewhat confusing that they use the word ìfurnisherî in the sentence, and I struggled with that, to be honest. But remember, an entity like M&A in particular is a good example, can be ñ can act as a furnisher or a user. Sometimes M&As act as a furnisher. Sometimes they're acting as a user. So 1681HE actually never applies to a furnisher that's acting in their capacity as a furnisher. It just doesn't because of the other, you know, the other qualifying. When I read these statutes, and I'm not from your neck of the woods, but it does appear to me that I'm not clear how it could have been Congress's ñ and I think this is what you're arguing ñ it could have been Congress's intent to exclude California Fair Trade Reporting Statute from preemption, but prevent any private action under the statute. Does that seem reasonable to you? Which is what I think is happening, or at least the way I read it. Your Honor, really the only ñ at the risk of repeating myself, the only answer I can give you is the one I began the argument with, which is ñ I didn't get it then either. I think it does make sense. In the sense that it is still the law. Perhaps it can be enforced by Federal or State authorities. Are there any reasoning that you attach to it? I understand what the law reads in the statute. It just seems inconsistent. The reasoning, I think, is right in line with 1681S2A and this Court's decision in Nelson, which is that sometimes there are laws that are there that you need to comply with, but that doesn't mean that consumers can sue you for them, and that doesn't make them any less than the law. Okay. I'll let you go way over your time. I appreciate that. Thank you. Mr. Gorman, you know, we've spent a lot of time in this case, but there's something you just must tell us. I'll give you a minute. No, Your Honor. I realize you've been very generous with letting me go five minutes over on my presentation. If there's any particular questions, I'd be happy to answer them. If I had any last comment, it would be I don't believe that Congress ever contemplated an ostrich-like response by a credit furnisher. They were supposed to do a real meaningful investigation and accurately and completely report what they find. So if there's something that's wrong, it should be corrected. And if it's not corrected, then the consumer can sue. Okay. Thank you. We appreciate the arguments in this case. It's an interesting case. Thank you. The matter is submitted.
judges: Paez, Berzon, Baer